UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTINA PORRITT and, LAUREN BRADLEY<br><br>Relator,<br><br>v.<br><br>MACLEAN POWER SYSTEMS, L.P. and MACLEAN-FOGG COMPANY,<br><br>Defendants. | Civil Action No. 10-cv-00519-DRH-DGW<br><br>Chief Judge David R. Herndon<br>Magistrate Judge Donald G. Wilkerson |

**DEFENDANTS MACLEAN POWER SYSTEMS' AND MACLEAN-FOGG COMPANY'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF ILLINOIS**

Relators Christina Porritt and Lauren Bradley (hereinafter "Relators") have filed a Complaint asserting that Defendants MacLean Power Systems (hereinafter "MPS" or "MP")[1] and MacLean-Fogg Company (hereinafter "MF") violated 35 U.S.C. § 292. In the event Relators' claims against MP and MF are not dismissed pursuant to MP and MF's currently filed motions, they should be transferred to the Northern District of Illinois under 28 U.S.C. § 1404 because the "center of gravity" of this case is located in Franklin Park, Illinois, which is in the Northern District of Illinois.

Although Relators chose the Southern District of Illinois, their choice should be given minimal deference because they are *qui tam* plaintiffs who will contribute little to the lawsuit. In other words, as *qui tam* plaintiffs, Relators merely seek to recover a penalty for an alleged injury

---

[1] As argued in MPS's and MF's concurrently filed motion to dismiss, Relators have incorrectly named MacLean Power Systems, L.P. as a defendant. The correct legal entity that Relators should have named is MacLean Power, L.L.C. In the event this Court permits Relators to amend the Complaint to name MP as a defendant, the following arguments are presented interchangeably on behalf of MPS and MP.

to the United States. Relators have not alleged that they are competitors with MP and MF and have not alleged any personal injury to themselves. Also, it is unlikely that any witnesses or documents relevant to the issues in this case are located in this district. Moreover, only one of the Relators actually resides in this district. By contrast, substantially all of MP's and MF's operations and activities relevant to the issues in this case are located in or around the Northern District of Illinois. Thus, the convenience of the parties and witnesses, as well as the interests of justice, support transfer.

I.    **FACTUAL BACKGROUND**

MP and MF are accused of advertising square shank barbed staples as patented on MP's website in violation of § 292. (*See* Compl., ¶¶ 28-29, 39-40). Relators do not allege that MP and MF falsely marked the staples with a patent, or falsely affixed a patent onto the staples. Indeed, MP and MF have never marked or affixed patent numbers onto the staples. Declaration of Dhruva Mandal ("Mandal Decl.") ¶¶ 6, 14 (Ex. 1). Relators allege that suit against MP and MF is proper in the Southern District of Illinois because MP and MF conduct business through sales of the square shank barbed staples in this district. (Compl., ¶ 10). MP and MF do not in any way concede to the veracity of Relators' allegation. MP and MF have not directly sold any products, including square shank barbed staples, to any customer located in the Southern District of Illinois. Mandal Decl., ¶ 4, 15. MP conducts sales of the square shank barbed staples through distributors, none of which are located in the Southern District of Illinois. *Id.* ¶ 4. MF, on the other hand, is completely removed from the sale of square shank barbed staples, as MF is not involved at all in the manufacture, sales, shipping, or advertising of the square shank barbed staples. *Id.* ¶¶ 13, 15. Nevertheless, even assuming *arguendo* that Relators' allegations of sales in the Southern District of Illinois are true, any contacts MP and MF have through the alleged

2

sales to this district are no greater than any other location in the country where the products can be purchased. *See id.* ¶ 4, 7, 15. Indeed, MP and MF lack any material contacts with the Southern District of Illinois. Aside from the allegations of selling products to this district, Relators do not allege that MP and MF have any other contacts with the Southern District of Illinois.

MP is a Delaware corporation with its headquarters at 7801 Park Place Rd. York, South Carolina. *Id.* ¶ 3. MPS also has a place of business at 11411 Addison Avenue, Franklin Park, Illinois. *Id.* Franklin Park, a suburb of Chicago, Illinois, is located in the Northern District of Illinois. *Id.* ¶ 3. The decisions relating to the sale and shipment of MP's square shank barbed staples originate with the employees in Franklin Park. *Id.* ¶ 4. Decisions relating to advertising square shank barbed staples are handled in Franklin Park. *Id.* ¶¶ 4, 5.

Because of MP's significant ties with Franklin Park, virtually every witness that could conceivably have knowledge about the allegations in Relators' Complaint is located in the Northern District of Illinois. Moreover, most if not all of MP's documents related to marketing and advertising the square barbed shank staples are located in Franklin Park. *Id.* ¶ 10. Documents relating to MP's financial condition and its ability to pay any fine that might be assessed are located in Franklin Park or at MP's headquarters in York, South Carolina. *Id.*

MF is a Delaware corporation with a principal place of business at 1000 Allanson Road, Mundelein, Illinois. *Id.* ¶ 12. Mundelein, a village in Lake County, Illinois, is located in the Northern District of Illinois. *Id.* The decisions relating to operations and management of MF originate with the employees in Mundelein. *Id.* As mentioned above, MF has absolutely no involvement with the advertisement, manufacture, packaging, or shipment of the products related to the alleged § 292 violation. *Id.* ¶¶ 13, 15. Nevertheless, even assuming *arguendo* that

3

Relators allegations of MF's connection to this lawsuit are true, because of MF's significant ties with Mundelein, virtually every witness and any document that could conceivably be related to the allegations in the Complaint are located in Mundelein.

## II.     ARGUMENT

This case should be transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) because this case's "center of gravity," *i.e.*, the place where the majority of the alleged activities, witnesses and documents related to Relators' cause of action, is located in the Northern District of Illinois. *See Worldwide Financial LLP v. Kopko*, 2004 WL 771219, at *4 (S.D. Ind. 2004). Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

"[A] court may . . . transfer any civil matter to another district where venue is proper." *Avante Inter. Technology, Inc. v. Hart Intercivic, Inc.*, 2009 WL 2448519, at *2 (S.D. Ill. July 22, 2009). Transfer is proper where "(1) venue is proper in both the transferor and the transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." *Id.* (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 & n.3 (7th Cir. 1986)). Here, the Northern District of Illinois is a proper venue because MP and MF have substantial business operations in the Northern District of Illinois. *See* 28 U.S.C. § 1391; Mandal Decl. ¶ 4, 5, 12. Thus, the only issues are whether transfer will serve the convenience of the parties and witnesses and whether transfer is in the interest of justice.

### A. The Convenience of the Parties and Witnesses Weighs in Favor of Transfer to the Northern District of Illinois

The convenience of the parties and witnesses weighs heavily in favor of transfer to the Northern District of Illinois. Factors a court considers and weighs in evaluating the convenience of the parties and witnesses include: (1) a plaintiff's choice of forum; (2) the convenience of the parties of litigating in the respective forums; (3) the situs of material events; (4) the convenience of the witnesses; and (5) the relative ease of access to sources of proof. *Avante*, 2009 WL 2448519 at *2 (citing *Brandon Apparel Group, Inc. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999)).

Here, the only factor conceivably supporting this Court as a convenient forum is that Relators chose this forum. However, as discussed below, the weight afforded to this factor should be significantly reduced given Relators' status as *qui tam* plaintiffs. Any weight given to this single factor should not preclude transfer because the case's "center of gravity" is in the Northern District of Illinois. The remaining four factors all clearly favor transfer to the Northern District of Illinois.

#### 1. Plaintiff's Choice of Forum Should Not Control This Case

In this case, the forum in which Relators wish to litigate should be given little, if any, weight because they are *qui tam* plaintiffs that have not suffered any injury to themselves. Instead, Relators merely seek to share a penalty with the United States government for alleged sovereign injuries to the United States and hypothetical and conjectural injuries to the public interest. (Compl., ¶¶ 37, 48). Relators themselves have suffered no personal injury whatsoever, competitive or otherwise. As such, Relators will contribute little, if anything, to this lawsuit. Therefore, their choice of forum should be afforded little if any weight.

5

The weight given to a plaintiff's choice of forum is diminished "when another forum has a stronger relationship to the dispute." *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007). A plaintiff's choice of forum "has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff." *Chicago, Rock Island and Pacific Railroad Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955). A plaintiff's choice of forum is also given less deference when that plaintiff represents a nationwide class. *Ruppert v. Principal Life Insurance Co.*, 2007 WL 2025233, at *5 (S.D. Ill. July 9, 2007). Here, while not a class action, the policy that underlies the *Ruppert* Court's decision applies equally here because § 292 provides that "any person" may bring a false marking action. 35 U.S.C. § 292.

Courts that have addressed whether to transfer venue under 28 U.S.C. § 1404(a) have found that a *qui tam* plaintiff's choice of forum is entitled to less weight than an ordinary plaintiff would receive. *See, e.g., San Francisco Tech., Inc. v. Glad Prods. Co.*, 2010 WL 2836775, at *8 (N.D. Cal. July 19, 2010) ("[Plaintiff's choice of forum] is not entitled to the considerable weight it typically receives"); *Harrington v. Ciba Vision Corp.*, No. 3:08-cv-00251-FDW, 2008 WL 2893098, at *1 (W.D.N.C. July 23, 2008); *U.S. ex. rel. Roop v. Arkray USA, Inc.*, No. 1:04-cv-87, 2007 WL 844691, at *2 (N.D. Miss. Mar. 19, 2007) ("[F]ederal district courts throughout the nation have held that, in *qui tam* actions, the plaintiff's choice of venue is not entitled to the same level of deference as in other actions."); *U.S. ex. rel. Adrian Regents of University of California*, No. C. 99-3864 THE, 2002 WL 334915, at *3 (N.D. Cal. Feb. 25, 2002) ("a plaintiff's choice of forum is *not* given substantial weight when the plaintiff is a qui tam relator, asserting the rights of the United States government."). Accordingly, Relators' choice of forum deserves little if any weight in deciding which venue is most convenient.

### 2. The Convenience of the Parties Weighs in Favor of Transfer to the Northern District of Illinois

The convenience of the parties weighs in favor of transfer to the Northern District of Illinois. As mentioned above, Relators will contribute virtually nothing to this litigation because they are *qui tam* plaintiffs who have suffered no personal injuries due to their allegations of § 292 violations. Thus, litigating this case in a district where Relators do not reside will not inconvenience them. In fact, one of the Relators does not even reside in the Southern District of Illinois, but rather in Columbia, Missouri, which is located in the Western District of Missouri.

On the other hand, MP and MF will be inconvenienced if this case is litigated in the Southern District of Illinois. MP and MF maintain no business operations, manufacturing facilities, or distribution warehouses in this district. *Id.* ¶ 7, 15. MP and MF do not manufacture the products relating to Relators' alleged § 292 violation in the Southern District of Illinois. *Id.* None of MP's and MF's advertising decisions relating to the square shank barbed staples originate in the Southern District. *Id.* ¶¶ 4, 12. Those decisions are made in the Northern District of Illinois and have nothing to do with activities occurring in this district. *Id.* Moreover, the specific activity that Relators complain of (i.e., advertising through MP's website) does not specifically target the Southern District of Illinois. *Id.* ¶ 7. MP's website is not specially designed or intended for the Southern District of Illinois. *Id.* MP does not use its website to advertise in this district over any other district. *Id.* Not only will MP and MF be inconvenienced if this case is litigated in the Southern District of Illinois, but MP's and MF's inconvenience outweighs any minimal inconvenience that Relators will experience because Relators will contribute very little, if anything to this litigation. Thus, the significant convenience of litigating this case in the Northern District of Illinois for MP and MF heavily outweighs any minimal

inconvenience to Relators. Therefore, this factor supports transfer to the Northern District of Illinois.

### 3. The Situs of Material Events Is the Northern District of Illinois

Transfer to the Northern District of Illinois is warranted because the situs of material events is the Northern District of Illinois. All decisions regarding the advertisement of the square shank barbed staples on MP's website occur in Franklin Park, Illinois. *Id.* ¶¶ 4, 5. All employees with knowledge of the products sold and advertised that relate to the § 292 allegations are located in Franklin Park or other areas located within the Northern District of Illinois. *Id.* Most if not all of the documents related to advertising the square shank barbed staples are located in Franklin Park. *Id.* ¶ 10. All of the packaging of the square shank barbed staples is performed in the Northern District of Illinois. *Id.* ¶ 7. None of these activities occur in the Southern District of Illinois. *Id.* The only activity Relators allege as occurring in this district is the sale of square shank barbed staples. (Complaint, ¶ 10). Even assuming that Relators' allegation of sales is true (which MP and MF do not admit), any contacts MP and MF have through the alleged sales to this district are no greater than any other location in the country where the products can be purchased. *See id.* ¶¶ 4, 7, 15. Therefore, this factor supports transfer to the Northern District of Illinois.

### 4. The Convenience of Witnesses Strongly Supports Transfer to the Northern District of Illinois

The convenience of potential witnesses strongly supports transfer to the Northern District of Illinois. In this case, most if not all of the relevant witnesses are employees of MP that are located in Franklin Park, Illinois, including employees involved in the advertising, sales, and shipping of the products related to Relators' cause of action. *Id.* ¶¶ 4, 5, 7. The only possible witness located in the Southern District of Illinois is one of the Relators, Christina Porritt. The

other Relator, Lauren Bradley, does not even live in the Southern District of Illinois. Given that Relators have suffered no personal injury and are not competitors of MP and MF, their testimony will be largely insignificant. Therefore, this factor supports transfer to the Northern District of Illinois.

### 5. The Ease of Access to Proof Supports Transfer to the Northern District of Illinois

The ease of access to proof supports transfer to the Northern District of Illinois. MP and MF both have substantial business operations in the Northern District of Illinois. *Id.* ¶¶ 4, 5, 12. The decisions related to selling, advertising, and packaging the products related the alleged § 292 violation occur in Franklin Park, Illinois. *Id.* ¶¶ 4, 5, 7. Most if not all documents and witnesses relevant to this case are located in or near Franklin Park, Illinois. *Id.* ¶¶ 4, 5, 10. There are no relevant documents belonging to MP and MF or relevant witnesses employed by MP and MF that are located in the Southern District of Illinois. *See id.* ¶¶ 7, 10, 15. Thus, most if not all sources of proof are located in the Northern District of Illinois. Therefore, this factor supports transfer to the Northern District of Illinois.

### B. The Interests of Justice Weigh in Favor of Transfer to the Northern District of Illinois

The interests of justice weigh in favor of transferring this case to the Northern District of Illinois. When evaluating the interests of justice, the Court should consider (1) how fast the action will proceed to trial in the transferee forum; (2) the familiarity with the applicable law in the transferor and transferee courts; (3) the desirability of resolving controversies in their locale; and (4) any relation of either community to the action at hand. *Avante*, 2009 WL 2448519, at *3 (citing *Coffee*, 796 F.2d at 221). The second factor is neutral as "both this Court and the transferee court can be presumed to have an equal knowledge of patent law in general." *Id.* at

9

*4. However, the first, third, and fourth factors weigh in favor of transfer to the Northern District of Illinois.

Regarding how fast the action will proceed to trial, according to the Judicial Caseload profiles generated by the Administrative Office of the U.S. Courts, the time to disposition and trial is longer in the Southern District of Illinois than it is in the Northern District of Illinois. *Compare* Ex. 2 *and* Ex. 3 (obtained at http://www.uscourts.gov/cgi-bin/cmsd2009.pl). The median pendency of a civil case from filing to disposition in the Southern District of Illinois was 9.2 months in 2009, versus 6.2 months in the Northern District of Illinois. Additionally, the median pendency of a civil case from filing to trial in the Southern District of Illinois was 54 months in 2009, versus 27.8 months in the Northern District of Illinois. *Id.*

Considering together the third and fourth factors—the desirability of resolving controversies in their locale and the relation of the communities to the action at hand together— these factors weigh in favor of transfer to the Northern District of Illinois. Only one of the Relators, Christina Porritt, is a resident of the Southern District of Illinois, and neither of the Relators has alleged an actual injury to themselves. Instead, Relators allege injuries to the sovereign interests of the United States and hypothetical and conjectural injuries to the general public interest (Compl., ¶¶ 37, 48), none of which have any specific relation to the Southern District of Illinois. On the other hand, the vast majority of MP's and MF's ties are to the Northern District of Illinois. As explained above, all of the decisions regarding sales, advertising, and packaging of the square shank barbed staples are in the Northern District of Illinois; all of the potential relevant witnesses are in the Northern District of Illinois; and all of the relevant documentation related to Relators' cause of action is located in the Northern District of Illinois. Mandal, Decl., ¶¶ 4, 5, 7, 10. As such, the communities of Franklin Park and

Mundelein, Illinois, and the communities near those cities in which any potential relevant witnesses live, are located in the Northern District of Illinois. Moreover, as Relators will contribute practically nothing to this lawsuit compared to MP's and MF's contributions, and considering that the vast majority of MP's and MF's ties are to the Northern District of Illinois, the Northern District of Illinois has a much greater desirability of resolving this case.

For at least these reasons, the interests of justice strongly weigh in favor of transfer to the Northern District of Illinois.

## III. CONCLUSION

For the foregoing reasons, MP and MF respectfully request that their motion to transfer to the United States District Court for the Northern District of Illinois be granted.

Dated: September 1, 2010

MacLean Power Systems
MacLean-Fogg Company

By: s/ Richard E. Stanley, Jr.

Richard E. Stanley, Jr. # 6270663
E. Brandon Nykiel #6297310
Jack C. Berenzweig #177008
Brinks, Hofer, Gilson & Lione
NBC Tower Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois 60611-5599
Telephone: (312) 321-4200
Facsimile: (312) 321-4299
Email: rstanley@usebrinks.com
Email: bnykiel@usebrinks.com
Email: jberenzweig@usebrinks.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 1, 2010, a copy of the foregoing was served via the Court's electronic filing system, and via email, on the following attorneys of record:

>Judy L. Cates
>David Cates
>THE CATES LAW FIRM LLC
>216 West Pointe Drive, Suite A
>Swansea, IL 62226
>Telephone: (618) 227-3644
>Email: jcates@cateslaw.com
>Email: dcates@cateslaw.com


                                    s/ Richard E. Stanley, Jr.